**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VIVO CAPITAL SURPLUS FUND VIII, L.P., | Civil Action No.: 25-CV-3051 (JPO) |
| Plaintiff, | |
| v. | |
| ORBIMED ADVISORS LLC, *et al.*, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**VIVO'S MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 2

    A.    Parties To This Action ................................................................................ 2

    B.    Defendants' Years-Long Activist Campaign To Take Over Sinovac ................... 3

    C.    Defendants' Control Of Sinovac's Board And Attempt To Entrench Themselves .................................................................................................... 4

    D.    Defendants' Attempt To Disenfranchise Minority Shareholders .......................... 6

    E.    Defendants' SEC Disclosures .................................................................... 6

ARGUMENT ....................................................................................................................... 6

I.      VIVO IS LIKELY TO SUCCEED ON THE MERITS ON ITS 13(D) CLAIMS ............ 7

    A.    Defendants Have Formed A Group And Are Thus Subject To Section 13(d) ......................................................................................................... 8

    B.    Defendants Have Misrepresented Themselves As Passive Investors ................... 10

    C.    Defendants Failed To Disclose Their Plans And Proposals Regarding Sinovac's Governance And Businesses ...................................................... 11

    D.    1Globe And Li Failed To Disclose Their Arrangements, Understandings And Relationships Regarding Sinovac's Common Stock .................................... 12

II.    VIVO WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION ............ 13

III.   BALANCE OF EQUITIES FAVORS AN INJUNCTION ............................................. 14

IV.   AN INJUNCTION IS IN THE PUBLIC INTEREST ..................................................... 15

CONCLUSION .................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*1Globe Cap., LLC, et al.*,
Exchange Act Release No. 88864, 2020 WL 2502266 (May 13, 2020)............................ 3, 4, 9

*Arcturus Therapeutics Ltd. v. Payne*,
2018 WL 2316790 (S.D. Cal. May 22, 2018) ........................................................................ 15

*Bath Indus., Inc. v. Blot*,
427 F.2d 97 (7th Cir. 1970)..................................................................................................... 15

*Broad. Music, Inc. v. Prana Hosp., Inc.*,
158 F. Supp. 3d 184 (S.D.N.Y. 2016) ..................................................................................... 14

*Bronx Household of Faith v. Bd. of Educ. of City of New York*,
331 F.3d 342 (2d Cir. 2003) ...................................................................................................... 7

*Clemente Glob. Growth Fund, Inc. v. Pickens*,
705 F. Supp. 958 (S.D.N.Y. 1989) .......................................................................................... 15

*Doctor's Assocs., Inc. v. Distajo*,
107 F.3d 126 (2d Cir. 1997) .................................................................................................... 16

*E.ON AG v. Acciona, S.A.*,
468 F. Supp. 2d 537 (S.D.N.Y. 2006) ....................................................................................... 7

*E.ON AG v. Acciona, S.A.*,
2007 WL 316874 (S.D.N.Y. Feb. 5, 2007) ......................................................................... 7, 13

*Egghead.com, Inc. v. Brookhaven Cap. Mgmt. Co.*,
194 F. Supp. 2d 232 (S.D.N.Y. 2002) ..................................................................................... 10

*fuboTV Inc. v. Walt Disney Co.*,
745 F. Supp. 3d 109 (S.D.N.Y. 2024) ....................................................................................... 7

*Gen. Aircraft Corp. v. Lampert*,
556 F.2d 90 (1st Cir. 1977) .................................................................................................. 7, 13

*Greenfield v. Cadian Cap. Mgmt., LP*,
213 F. Supp. 3d 509 (S.D.N.Y. 2016) ....................................................................................... 9

*Kaufman & Broad v. Belzberg*,
522 F. Supp. 35 (S.D.N.Y. 1981) ............................................................................................ 13

*Morales v. Quintel Ent., Inc.*,
    249 F.3d 115 (2d Cir. 2001) ..................................................... 8

*Rosenberg v. XM Ventures*,
    274 F.3d 137 (3d Cir. 2001) ..................................................... 9

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007) ..................................................... 8

*S.E.C. v. Amster & Co.*,
    762 F. Supp. 604 (S.D.N.Y. 1991) ......................................... 10

*Sterling v. Deutsche Bank Nat'l Tr. Co.*,
    368 F. Supp. 3d 723 (S.D.N.Y. 2019) ..................................... 7

*Taseko Mines Ltd. v. Raging River Cap.*,
    185 F. Supp. 3d 87 (D.D.C. 2016) ..................... 7, 13, 14, 15

*Wellman v. Dickinson*,
    682 F.2d 355 (2d Cir. 1982) ................................................... 14

*Yang v. Kosinski*,
    960 F.3d 119 (2d Cir. 2020) ..................................................... 6

**Statutes and Rules**

15 U.S.C. § 78m(d)(1) ................................................................. 8

15 U.S.C. § 78m(d)(3) ................................................................. 8

15 U.S.C. § 78m(g)(3) ................................................................. 8

17 C.F.R. § 240.13d–1 .............................................................. 10

17 C.F.R. § 240.13d–101 ..................................................... 11, 12

17 C.F.R. § 240.13d–3 ................................................................. 8

17 CFR § 240.13d–1(k)(2) ............................................................ 8

## INTRODUCTION

Plaintiff Vivo Capital Surplus Fund VIII, L.P. ("Vivo" or "Plaintiff") respectfully requests that this Court issue a preliminary injunction enjoining Defendants OrbiMed Advisors LLC ("OrbiMed Advisors") and OrbiMed Capital LLC ("OrbiMed Capital", together with OrbiMed Advisors, "Defendants") from making further misleading statements in violation of Section 13(d) of the Securities Exchange Act of 1934 (the "Exchange Act") and requiring Defendants to promptly rectify their ongoing violations of Section 13(d). Defendants have formed an undisclosed group with certain other shareholders of Sinovac Biotech Ltd. ("Sinovac" or the "Company"), including 1Globe Capital LLC ("1Globe Capital") and its owner Jiaqiang "Chiang" Li ("Li", together with 1Globe Capital, "1Globe"), to orchestrate a secret plan to control Sinovac and change its Board, capital structure and corporate governance. Along with 1Globe, Defendants have engaged in a pattern of non-disclosures, which have caused and continue to cause irreparable harm to Plaintiff and other minority Sinovac shareholders.

Specifically, Defendants have violated Section 13(d) of the Exchange Act by failing to disclose, among other things: (1) their status as non-passive investors; (2) the formation of a group among Defendants, 1Globe, and other persons acting in concert therewith with respect to Sinovac, and the identity of and information relating to the members of said group; (3) a description, in Item 4 of Schedule 13D, of their plans and proposals to act in concert with other shareholders, including but not limited to 1Gobe, to affect the composition of Sinovac's Board of Directors, entrench their control, disenfranchise minority shareholders, and seek further changes to the Company's governance and business; and (4) a description, in Item 6 of Schedule 13D, of their arrangements, understandings or relationships with other shareholders, including but not limited to 1Globe, with respect to Sinovac shares.

1

Defendants' violations come at a critical juncture for Sinovac. Since January of this year, Defendants and their allies have taken control of Sinovac's Board of Directors, and carried out plans and proposals to effect changes to the governance and business of the Company, and commenced a scheme to entrench themselves to the detriment of its mission and long-term shareholder value.

Vivo's motion for a preliminary injunction seeks to compel Defendants to remedy the above violations by issuing corrective disclosures, including filing an accurate Schedule 13D disclosing their group ownership and coordination. Without injunctive relief, Vivo shareholders will suffer further irreparable harm. The balance of equities and the public interest strongly favor the issuance of a preliminary injunction. Defendants have violated securities laws, and they will suffer no cognizable harm by complying with the legal obligations that are already required of them under the Exchange Act. Vivo's motion should be granted.

## FACTUAL BACKGROUND

### A. Parties To This Action

Plaintiff Vivo Capital Surplus Fund VIII, L.P. is an investment fund that focuses on supporting the expansion of global healthcare access. In line with that mission, Vivo and its affiliates have invested in over 410 healthcare companies around the world. *See* Declaration of Stephen Blake ("Blake Decl.") ¶ 3. Vivo currently holds 165,079 shares of the common stock of Sinovac Biotech Ltd., a Chinese biopharmaceutical company incorporated in Antigua and Barbuda ("Antigua") and based in Beijing. *See* Blake Decl. ¶¶ 4–5, Exs. A (Share Certificate) and B (Sinovac's Form 20-F), at 6. Sinovac's common shares are listed on the Nasdaq Stock Market. *See* Blake Decl. ¶ 5, Ex. B, at 23.

According to their most recent joint public disclosures, OrbiMed Advisors and OrbiMed Capital own 1,219,500 shares and 1,448,000 of Sinovac's common stock, which represent 1.7%

and 2% of the outstanding common stock of Sinovac, respectively.[1]  *See* Blake Decl. ¶ 6, Ex. C ("2016 13G/A").

**B.**  **Defendants' Years-Long Activist Campaign To Take Over Sinovac**

For several years, Defendants and their allies carried out an aggressive activist campaign to seize control of Sinovac.  Prior to an annual general meeting of shareholders held in February 2018 (the "AGM"), Defendants had formed an undisclosed group with certain other Sinovac shareholders, including 1Globe, to orchestrate a secret plan to replace the Board of Sinovac.  *See 1Globe Cap., LLC, et al.* (the "SEC Order"), Exchange Act Release No. 88864, 2020 WL 2502266, *1 (May 13, 2020); Complaint ("Compl.") ¶ 26.  In particular, Defendants' ally 1Globe increased their positions in Sinovac by funding Li's relatives' purchases of the Company's common stock on Li's behalf without making legally required disclosures in their SEC filings.  *See* SEC Order, at *4–5; Compl. ¶ 26.  After clandestinely amassing Sinovac shares, Defendants and 1Globe ambushed the Company and its other shareholders at the AGM and proposed a slate of new directors without providing required prior notice.  *See* SEC Order, at *1, 6; Compl. ¶ 26. While Defendants claimed their directors were validly elected, Sinovac disputed this, asserting the incumbent directors remained in place.  *See* SEC Order, at *6; Blake Decl. ¶ 5, Ex. B, at 11; Compl. ¶ 26.

Undeterred, Defendants' ally 1Globe sought to seize control of Sinovac through other illegal means.  In November 2018, the Hong Kong High Court found that two 1Globe-affiliated individuals filed forged documents to change directors of Sinovac's Hong Kong subsidiary.  *See* Blake Decl. ¶ 5, Ex. B, at 12.  In March 2020, a PRC regulator also found 1Globe and its allies submitted forged documents to unlawfully change directors of Sinovac's Beijing subsidiary.  *Id.*

---

[1]  Based on 71,860,702 shares outstanding as of March 31, 2024, as reported in Sinovac's Form 20–F filed with the Securities and Exchange Commission (the "SEC") on April 29, 2024.

In May 2020, the SEC found 1Globe Capital and Li in violation of federal securities laws for "fail[ing] to disclose their full beneficial ownership of Sinovac stock, inclusive of substantial shares held by related parties, and their participation in a plan" to replace Sinovac's board of directors at the AGM. *See* SEC Order, at *1. Specifically, the SEC determined that 1Globe Capital, Li, and Li's relatives, by the end of 2017, "together held nearly one-third of the common stock of [Sinovac] and participated in an activist plan to replace four of five incumbent directors . . . at Sinovac's 2018 annual shareholder meeting." *Id.* Based on its findings, the SEC ordered that 1Globe Capital and Li cease and desist from committing or causing any violations and any future violations of Sections 13(d)(1) and 13(d)(2) of the Exchange Act and Rules 13d–1 and 13d–2 thereunder. *Id.* at *9. The SEC also imposed civil money penalties on both 1Globe Capital and Li. *Id.* 1Globe and Li consented to the SEC's order. *Id.* at *1.

Meanwhile, Defendants' and 1Globe's unrelenting pursuit of their activist agenda resulted in prolonged litigation in the courts of Antigua between 1Globe Capital and the Company. *See* Blake Decl. ¶ 7, Ex. D (Ex. 99.1 to Sinovac's 6–K filed on August 16, 2024). After almost seven years and two losses, in January 2025, 1Globe Capital finally obtained a ruling that the slate of nominees Defendants and 1Globe put forward at the AGM should be deemed elected. *See* Blake Decl. ¶ 8, Ex. E (Ex. 99.1 to Sinovac's 6–K filed on January 16, 2025).

### C.     Defendants' Control Of Sinovac's Board And Attempt To Entrench Themselves

Following the January 2025 court ruling, Defendants and 1Globe immediately installed on Sinovac's Board their slate of new directors and, at the same time, illegally excluded Vivo's Board representative Mr. Shan Fu, whose directorship was not affected by any court decision,

from all Board matters.  *See* Blake Decl. ¶¶ 8–9, Exs. E and F (Ex. 99.1 to Sinovac's 6–K filed on February 28, 2025).

Since then, Defendants and 1Globe have taken a number of additional steps to entrench their control.  On February 28, 2025, Sinovac, now controlled by Defendants' and 1Globe's directors, issued a press release ("February 28 Press Release") announcing the make-up of its new Board.  *See* Blake Decl. ¶ 9, Ex. F.  The press release did not name Mr. Fu as a Director. Instead, the new Board purportedly comprises, among others, OrbiMed's Partner and Senior Managing Director David Guowei Wang, Li's nephew Pengfei Li, and Li himself as Chairman of the Board, even though Li was not nominated at the AGM and was not mentioned in the January 2025 court decision.  *See* Blake Decl. ¶ 10, Ex. G (January 2025 Privy Council Decision).  On March 28, 2025, Sinovac issued another press release announcing that the Board had purportedly appointed Mr. Sven H. Borho, OrbiMed's Managing Partner, as a new Director and Chair of the Audit Committee.  *See* Blake Decl. ¶ 11, Ex. H (Ex. 99.1 to Sinovac's 6–K filed on March 31, 2025).

Furthermore, Sinovac, under Defendants' and 1Globe's control, has been resisting shareholders' demand for Board re-election.  On March 18, 2025, SAIF Partners IV L.P. ("SAIF"), a 15% shareholder, submitted a requisition to the Board, formally demanding that the Board call a special meeting of shareholders within 21 days under Antiguan law, for the purpose of electing a different slate of Director nominees including Mr. Fu.  *See* Blake Decl. ¶ 12, Ex. I (Ex. 1 to SAIF's Schedule 13D/A filed on March 19, 2025).  To date, the Board has not called a meeting of shareholders or even publicly acknowledged its receipt of the demand.  *See* Blake Decl. ¶ 12.

## D. Defendants' Attempt To Disenfranchise Minority Shareholders

When Sinovac, under Defendants' and 1Globe's control, first announced its new Board on February 28, the same press release also opaquely stated that Sinovac had initiated a process to determine which shares of Sinovac are validly issued and outstanding. On April 1, 2025, Sinovac issued another press release announcing that the new Board "decided to declare a special cash dividend of US$55.00 per common share," but that this dividend will exclude certain minority shareholders including Vivo. *See* Blake Decl. ¶ 13, Ex. J (Ex. 99.1 to Sinovac's 6–K filed on April 1, 2025). Once again, the April 1 press release included a vague statement that the Board is "assessing" certain corporate actions that Sinovac took in the past 7 years, including the issuance of shares to Plaintiff. *Id.* But for the exclusion, Vivo and other affected shareholders would be entitled to more than 600 million U.S. dollars in dividend. Compl. ¶ 34.

## E. Defendants' SEC Disclosures

Defendants most recently disclosed their investment in Sinovac in an amendment to their joint Schedule 13G that was filed over nine years ago, on February 11, 2016. *See* Blake Decl. ¶ 6, Ex. C. Defendants' 2016 13G/A does not disclose the formation of a group among Defendants and 1Globe. Nor does it disclose its and the group's plans and proposals with respect to control and governance of Sinovac, and contracts, arrangements, understandings, and relationships shared among members of the group with respect to Sinovac. Defendants have not amended their 2016 13G/A since February 11, 2016, and they have never filed a Schedule 13D relating to their ownership of Sinovac shares or otherwise made the disclosures required therein.

## ARGUMENT

The party seeking a preliminary injunction must show (1) a likelihood of success on the merits, (2) that it will be irreparably harmed in the absence of an injunction, (3) that the balance of equities tips in the moving party's favor, and (4) the effect, if any, on the public interest. *See*

*Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020). Plaintiff here meets all four of the requirements for a preliminary injunction.

In reviewing a motion for a preliminary injunction, a court "may consider the entire record including affidavits and other hearsay evidence." *Sterling v. Deutsche Bank Nat'l Tr. Co.*, 368 F. Supp. 3d 723, 725 n.1 (S.D.N.Y. 2019).

Courts have routinely granted preliminary injunctive relief under Section 13(d) claims by requiring violating parties to issue corrective disclosures. *See E.ON AG v. Acciona, S.A.*, 468 F. Supp. 2d 537, 556 (S.D.N.Y. 2006) ("Where there has been a failure to disclose material facts in a Schedule 13D prior to the consummation of a tender offer, a preliminary injunction should ordinarily issue requiring a corrective disclosure, and if necessary, enjoining a tender offer until such disclosures have been made."); *see also Gen. Aircraft Corp. v. Lampert*, 556 F.2d 90, 97 (1st Cir. 1977) (affirming district court's order granting a preliminary injunction requiring defendants to correct Schedule 13D disclosures); *Taseko Mines Ltd. v. Raging River Cap.*, 185 F. Supp. 3d 87, 94 (D.D.C. 2016) (granting preliminary injunction requiring the same).

## I.     VIVO IS LIKELY TO SUCCEED ON THE MERITS ON ITS 13(D) CLAIMS

"To establish a likelihood of success on the merits, a plaintiff 'need not show that success is an absolute certainty.'" *fuboTV Inc. v. Walt Disney Co.*, 745 F. Supp. 3d 109, 133 (S.D.N.Y. 2024). This court has held that a preliminary injunction requiring defendants to make corrective disclosures that they were required to make under existing laws need only meet the ordinary standard rather than a heightened standard applicable to other forms of relief.[2] *See E.ON AG v. Acciona, S.A.*, 2007 WL 316874, at *7 (S.D.N.Y. Feb. 5, 2007) (holding plaintiff need only meet

---

[2] When the relief sought will alter rather than maintain the status quo, the plaintiff must meet the heightened standard which requires the demonstration of a "clear" or "substantial" likelihood of success on the merits. *Bronx Household of Faith v. Bd. of Educ. of City of New York*, 331 F.3d 342, 349 (2d Cir. 2003).

"the ordinary standard in order to secure a preliminary injunction prohibiting [the defendants] from making future false statements and requiring it to make corrective disclosures prior to the consummation of a tender offer").  While Vivo's 13(d) claims easily meet the ordinary standard, its likelihood of success is also clear and substantial.

### A.     <u>Defendants Have Formed A Group And Are Thus Subject To Section 13(d)</u>

Section 13(d) of the Exchange Act requires any person, including a group, acquiring beneficial ownership[3] of more than 5 percent of a corporation's common stock to file a Schedule 13D within five days of the acquisition disclosing certain information to the corporation, the SEC, and the exchanges on which the stock is traded.  15 U.S.C. § 78m(d)(1); *see Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 123 (2d Cir. 2001).  Sections 13(d) and 13(g) of the Exchange Act further provides that a group shall be deemed a "person" for the purposes of 13D and 13G disclosure "[w]hen two or more persons act as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding, or disposing of securities of an issuer."  15 U.S.C. §§ 78m(d)(3), (g)(3).  "[T]he touchstone of a group within the meaning of Section 13(d) is that the members combined in furtherance of a common objective."  *Roth v. Jennings*, 489 F.3d 499, 508 (2d Cir. 2007).  If a group beneficially owns more than 5 percent of a corporation of common stock, each member of the group is subject to the disclosure obligations under Section 13(d), even if itself beneficially owns less than 5%.  *See* 17 CFR § 240.13d–1(k)(2).

---

[3]  Rule 13d–3 promulgated under Section 13(d) of the Exchange Act defines "beneficial owner of a security" as "any person who, directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise has or shares: (1) Voting power which includes the power to vote, or to direct the voting of, such security; and/or, (2) Investment power which includes the power to dispose, or to direct the disposition of, such security."  17 C.F.R. § 240.13d–3.  It further provides that "[a]ll securities of the same class beneficially owned by a person, regardless of the form which such beneficial ownership takes, shall be aggregated in calculating the number of shares beneficially owned by such person."  *Id.*

Defendants are subject to Section 13(d) because they are members of a group whose aggregate beneficial ownership of Sinovac's common stock exceeds the 5 percent threshold defined by Section 13(d). In particular, Defendants had formed an undisclosed group with 1Globe and other shareholders to orchestrate a secret plan to replace the Board of Sinovac. After clandestinely amassing Sinovac shares, Defendants and 1Globe ambushed the Company and its other shareholders at the 2018 AGM and proposed a slate of new directors without providing required prior notice. *See* SEC Order, at *1, 6; Compl. ¶ 26. Defendants contended that their slate of directors were validly elected to the Board at the AGM, but Sinovac disputed this and maintained that the incumbent directors were validly in place and had not been replaced at the AGM. *See* SEC Order, at *6; Blake Decl. ¶ 5, Ex. B, at 11; Compl. ¶ 26. After prolonged litigation between 1Globe and Sinovac in the courts of Antigua, *see* Blake Decl. ¶ 7, Ex. D, Defendants and 1Globe finally obtained a ruling in January 2025 that the slate of nominees they put forward at the AGM should be deemed elected. *See* Blake Decl. ¶ 8, Ex. E.

According to its most recent public disclosures, 1Globe Capital beneficially owns 18,515,315 shares of Sinovac's common stock, which represent approximately 25.8% of the outstanding common stock of Sinovac. *See* Blake Decl. ¶ 14, Ex. K (1Globe Capital's Schedule 13D/A). The group's beneficial ownership of Sinovac's common stock thus far exceeds the 5 percent threshold defined by Section 13(d). *Rosenberg v. XM Ventures*, 274 F.3d 137, 144 (3d Cir. 2001) ("This provision has the effect of aggregating the individual stock beneficially owned by each group member and attributing to each member the total holdings of the group."); *see also Greenfield v. Cadian Cap. Mgmt., LP*, 213 F. Supp. 3d 509, 512 (S.D.N.Y. 2016) (noting in the context of Section 16(b) claims that "the aggregate number of shares owned by a group . . . is

attributed to each member of the group").  As members of the group, Defendants are subject to Section 13(d).

### B.  Defendants Have Misrepresented Themselves As Passive Investors

Rule 13d–1(c) permits a passive investor with 5–20 percent ownership in an issuer to file a short-form Schedule 13G in lieu of a Schedule 13D.  In filing a Schedule 13G, the reporting person must certify that they have not "acquired the securities with any purpose, or with the effect of, changing or influencing the control of the issuer."  17 C.F.R. § 240.13d–1.  Rule 13d-1(e) also requires such passive investor to file within five days a Schedule 13D when it develops the intent to change or influence control of the issuer.  *Id.*; *S.E.C. v. Amster & Co.*, 762 F. Supp. 604, 609 (S.D.N.Y. 1991) (noting that, for purposes of Schedule 13D filings, control means "the power to direct or cause the direction of the management and policies of a person, whether the ownership of voting securities, by contract, or otherwise").

Defendants most recently disclosed their investment in Sinovac by filing an amendment to their joint Schedule 13G on February 11, 2016.  *See* Blake Decl. ¶ 6, Ex. C.  Even assuming Defendants qualified as passive investors at that time, they clearly developed an intent to change or influence Sinovac's control when they ambushed the incumbent Sinovac Board at the AGM and proposed a competing slate of nominees.  *See Egghead.com, Inc. v. Brookhaven Cap. Mgmt. Co.*, 194 F. Supp. 2d 232, 244 (S.D.N.Y. 2002) (citing as support another district court's decision where the court relied on "defendants' expressed intent to gain two seats on the board of directors" to find a control purpose).  Defendants, however, have never filed a 13D even as of today, when OrbiMed's Partner and Senior Managing Director David Guowei Wang and OrbiMed's Managing Partner Sven H. Borho are purportedly Directors of Sinovac's Board.  *See* Blake Decl. ¶¶ 9, 11, Exs. F and H.  As a result, the passive investor certification in Defendants'

2016 13G/A was and continues to be false, and their ongoing failure to file a 13D violates Rule 13d-1(e).

### C. Defendants Failed To Disclose Their Plans And Proposals Regarding Sinovac's Governance And Businesses

Item 4 of Schedule 13D requires the filer to disclose "purposes of the acquisition of securities of the issuer" and any "plans or proposals" relating to, *inter alia*: "[a]n extraordinary corporate transaction"; "[a]ny change in the present board of directors or management of the issuer, including any plans or proposals to change the number or term of directors or to fill any existing vacancies on the board"; "[a]ny material change in the present capitalization or dividend policy of the issuer"; "[a]ny other material change in the issuer's business or corporate structure"; "[c]ausing a class of securities of the issuer to be delisted from [an exchange] . . . or [a]ny action similar." 17 C.F.R. § 240.13d–101. Defendants violated Section 13(d) by failing to disclose plans and proposals to act in concert with members of the group with respect to Sinovac and its minority shareholders.

Defendants' 2016 13G/A does not disclose any plans and proposals with respect to control and governance of Sinovac. *See* Blake Decl. ¶ 6, Ex. C. However, since the filing, various events have revealed Defendants' and 1Globe's plans and proposals with respect to "change in the present board of directors or management of [Sinovac], including . . . plans or proposals to change the number or term of directors or to fill any existing vacancies on the board" and "present capitalization or dividend policy of [Sinovac]," which trigger the need to disclose such plans and proposals under Item 4 of Schedule 13D. *See* 17 C.F.R. § 240.13d–101.

As mentioned above, Defendants and 1Globe ambushed the 2018 AGM meeting and proposed a slate of new directors, which resulted in a multi-year dispute over validity of the board. Since the January 2025 ruling, an activist bloc led by Defendants and 1Globe has

controlled Sinovac's Board.  The new Board purportedly comprises, among others, OrbiMed's Partner and Senior Managing Director David Guowei Wang, Li's nephew Pengfei Li, and Li himself as Chairman of the Board.  *See* Blake Decl. ¶ 9, Ex. F.

Further, in the February 28 Press Release, Sinovac announced that the Board, led by Defendants and 1Globe, initiated a process to determine which shares of Sinovac are validly issued and outstanding.  *Id.*  Subsequently, on April 1, 2025, Sinovac issued another press release announcing that the Board "decided to declare a special cash dividend of US$55.00 per common share" to the exclusion of certain minority shareholders including Vivo.  *See* Blake Decl. ¶ 13, Ex. J.  These announcements serve as manifest evidence of Defendants' and 1Globe's plans and proposals with respect to key governance issues of Sinovac, but their 2016 13G/A does not disclose such plans and proposals.

### D.     1Globe And Li Failed To Disclose Their Arrangements, Understandings And Relationships Regarding Sinovac's Common Stock

Item 6 of Schedule 13D requires disclosure of contracts, arrangements, understandings, and relationships by the reporting person with respect to any securities of the issuer, including with respect to voting of any securities.  17 C.F.R. § 240.13d–101.

In addition to the events described in the above sections, Defendants and 1Globe have had "arrangements" or "understandings" with respect to voting of Sinovac's securities and have acted in concert to take steps in accordance with such arrangements and understandings. Specifically, Sinovac, under Defendants' and 1Globe's control, has been resisting a formal shareholder demand for convening a shareholders' meeting and electing a different slate of Director nominees.  On March 18, 2025, SAIF, a minority shareholder of Sinovac, requisitioned the new Board to call a special meeting of shareholders for the purposes of removing directors affiliated with Defendants and 1Globe and electing a new slate of directors.  *See* Blake Decl. ¶

12, Ex. I.  To date, the Board has not called a meeting of shareholders or even publicly acknowledged its receipt of the demand.  *See* Blake Decl. ¶ 12.  Sinovac's continued refusal, at the behest of Defendants and 1Globe, to call a meeting of shareholders reflects Defendants' and 1Globe's shared arrangement and understanding with respect to voting of Sinovac's common stock, but their 2016 13G/A does not disclose such arrangement and understanding.

In short, Defendants have formed a group with other shareholders, taken control of Sinovac's Board of Directors, and carried out plans and proposals to effect changes to the governance and business of the Company, including to illegally disenfranchise minority shareholders including Vivo, all the while keeping shareholders and the investing public in the dark.  As such, Vivo is likely to prevail on its Section 13(d) claims and courts have granted preliminary injunctive relief where a plaintiff can show likelihood of success on the merits of such claims.  *See E.ON AG v. Acciona, S.A.*, 2007 WL 316874, at *9 ("[Plaintiff] has succeeded in showing a substantial likelihood of demonstrating at trial that [defendant] has filed materially false and misleading Schedule 13Ds . . . These deficiencies provide abundant support for a preliminary injunction against [the defendant] prohibiting it from any further violation of Section 13(d)."); *see also Gen. Aircraft Corp.*, 556 F.2d at 93, 97 (affirming district court's preliminary injunction order requiring corrective disclosure after agreeing with its determination that the "[movant] would prevail on the merits"); *Taseko Mines*, 185 F. Supp. 3d at 91, 94 (granting preliminary injunction requiring corrective disclosure after acknowledging that "[i]t is particularly important for the movant to demonstrate a likelihood of success on the merits").

## II.    VIVO WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION

Vivo and other minority shareholders will suffer irreparable harm if a preliminary injunction is not granted.  As an initial matter, Defendants' failures to make the required Schedule 13D filings and disclosures subvert Congress's purpose in enacting Section 13(d) of

the Exchange Act to protect investors and promote efficiency in the securities markets through transparency, and, without disclosure of truthful information, irreparably harm shareholders. *See Kaufman & Broad v. Belzberg*, 522 F. Supp. 35, 46 (S.D.N.Y. 1981) (citing *Gen. Aircraft Corp.*, 556 F.2d at 96–97) ("As the very raison d'etre of Section 13(d) was thwarted by appellants' continued failure to disclose the statutorily required information, we discover no error in the decision that irreparable injury would occur to shareholders and the investing public if appellants were allowed to continue their activities without correcting and amplifying their Schedule 13D."); *Taseko Mines*, 185 F. Supp. 3d at 93 ("An uninformed shareholder vote is often considered an irreparable harm, particularly because the raison d'etre of many of the securities laws is to ensure that shareholders make informed decisions.").

More importantly, Defendants' violations of Section 13(d) come at a critical juncture for Sinovac. As discussed above, another Sinovac shareholder has requested a special meeting of shareholders to elect new directors, a clear challenge to the Defendants' control of Sinovac and their oppression of other shareholders. It is imperative that shareholders vote with full knowledge of Defendants' plans and proposals with respect to Sinovac, which they have failed to disclose. As a result, to avoid further irreparable harm that would result from an otherwise uninformed vote, Defendants should be required to make immediate corrective disclosures in compliance with their Schedule 13D disclosure requirements. *See Wellman v. Dickinson*, 682 F.2d 355, 365 (2d Cir. 1982) ("Section 13(d) was designed to alert investors in securities markets to potential changes in corporate control and to provide them with an opportunity to evaluate the effect of these potential changes.").

## III.   BALANCE OF EQUITIES FAVORS AN INJUNCTION

The balance of equities strongly favors the issuance of a preliminary injunction. Defendants will suffer no harm because they would merely be required to comply with securities

law.  *See Broad. Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 196 (S.D.N.Y. 2016) ("[T]he Court cannot detect any hardship that an injunction obliging defendants to comply with their legal duties would impose on them.")

Meanwhile, Defendants' persistent failure to make their legally required disclosures in a timely manner has caused and continues to cause significant and irreparable harm to Plaintiff Vivo and other minority shareholders.  As explained above, Defendants have already taken several steps to entrench their control over Sinovac and to disenfranchise minority shareholders, including Vivo, without providing the necessary disclosures regarding their plans and proposals. *See supra* at 13–14.  Without a preliminary injunction, Plaintiff Vivo and other minority shareholders face permanent harm.  Even if Vivo ultimately prevails, such a victory would be pyrrhic, as the harm will have already occurred.  *See Clemente Glob. Growth Fund, Inc. v. Pickens*, 705 F. Supp. 958, 971 (S.D.N.Y. 1989) (balance of equities favored preliminary injunction because "[i]f defendants are able to take control of [plaintiff] and effect these changes, and are later precluded from involvement in its management, the [plaintiff] would plainly face serious hardship").

## IV.     AN INJUNCTION IS IN THE PUBLIC INTEREST

"[E]ffective enforcement of the federal securities laws promotes the public interest." *Taseko Mines*, 185 F. Supp. 3d at 94.  This is particularly true for disclosure requirements under the federal securities laws, because "if shareholders lack the required information to vote on corporate governance . . . , the hardship would be on the shareholders and the public." *Arcturus Therapeutics Ltd. v. Payne*, 2018 WL 2316790, at *9 (S.D. Cal. May 22, 2018); *see also Bath Indus., Inc. v. Blot*, 427 F.2d 97, 109 (7th Cir. 1970) ("[Williams Act, including Section 13(d),] is designed solely to require full and fair disclosure for the benefit of investors."). Also, as a leading supplier of vaccines globally, transparency and accountability in Sinovac's

corporate governance are paramount to both its investors and the public in general.  As a result,

the public interest also strongly favors a preliminary injunction.

## <u>CONCLUSION</u>

For the foregoing reasons, Vivo respectfully requests this Court issue a preliminary

injunction requiring Defendants to issue, within 5 days of the injunction, corrective disclosures

rectifying their material violations of Section 13(d) of the Exchange Act.[4]

---

[4] Rule 65(c) gives the district court discretion to dispense with the bond requirement "where there has been no proof of likelihood of harm."  *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997).  A bond is not required to grant this preliminary injunction, because requiring corrective disclosure presents no demonstrable harm to Defendants.

Dated: April 22, 2025                    Respectfully submitted,

                                         **SIMPSON THACHER & BARTLETT LLP**

                                         /s/ *Stephen P. Blake*
                                         Stephen P. Blake
                                         Bo Bryan Jin
                                         2475 Hanover Street
                                         Palo Alto, California 94304
                                         Telephone: (650) 251-5000
                                         Facsimile: (650) 251-0002
                                         sblake@stblaw.com
                                         bryan.jin@stblaw.com

                                         *Attorneys for Plaintiff Vivo Capital Surplus Fund VIII, L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that, on April 22, 2025, a true copy of the above document was served on

Defendants via first class mail at the addresses below, and will be filed through the ECF system.

**OrbiMed Advisors LLC**
601 Lexington Avenue, 54th Floor
New York, NY 10022

**OrbiMed Capital LLC**
601 Lexington Avenue, 54th Floor
New York, NY 10022

Dated: April 22, 2025                    /s/ *Stephen P. Blake*
                                         Stephen P. Blake